IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

METROPOLITAN LIFE INSURANCE )
COMPANY, a New York corporation, )
                                                               )
       Plaintiff, )
                                                               )
v. )   Case No. CIV-24-513-HE
                                                              )
(1) SDM HOLDINGS, LLC, an Oklahoma )
Limited Liability Company; and )
                                                               )
(2) SDM HOLDINGS, LLC, a Connecticut )
Limited Liability Company, )
                                                               )
       Defendants. )

**PLAINTIFF'S UNOPPOSED MOTION AND BRIEF IN SUPPORT FOR
INTERPLEADER DEPOSIT, DISCHARGE, AND DISMISSAL**

Pursuant to 28 U.S.C. § 1335 ("Section 1335") and Rule 67 of the Federal Rules of Civil Procedure, Plaintiff, Metropolitan Life Insurance Company ("MetLife"), hereby moves for deposit of the proceeds of the life insurance policy at issue in the above-styled interpleader action plus applicable interest (the "Proceeds") and discharge and dismissal of MetLife. MetLife cannot determine the proper beneficiary of the Proceeds without risking exposure to double liability. As a mere stakeholder, MetLife has no interest in the Proceeds. MetLife therefore requests that the Court order MetLife to deposit the Proceeds into the Registry of the Court, enjoin Defendants from instituting any action or proceeding against MetLife for the recovery of the Proceeds, discharge MetLife from any further liability upon payment of the Proceeds, and dismiss MetLife from the action with prejudice. The receiver for Avon Capital, LLC has entered an appearance in this interpleader action on behalf of SDM Holdings, LLC, an Oklahoma Limited Liability

Company ("SDM-OK"), and does not oppose this motion. SDM Holdings, LLC, a Connecticut Limited Liability Company ("SDM-CT"), has been served with summons but has not appeared and is in default. MetLife submits the following brief in support.

## BACKGROUND

**The Policy.** Effective June 11, 1997, MetLife issued policy no. 976613180A (the "Policy"), covering the life of William Taylor (the "Insured"), in the amount of $40,000. The owner and beneficiary of the Policy upon issuance was Margaret Taylor. (Doc. 1, Compl. ¶ 6 & Ex. 1). Effective on or about August 3, 2009, SDM-OK became the owner and beneficiary of the Policy, *via* assignment from USI Trust. (*Id*. ¶ 7 & Ex. 2). On November 7, 2023, the Insured passed away. (*Id*. ¶ 8 & Ex. 3).

**The Competing Claims.** On March 12, 2024, Nicole Jacobsen, in the asserted capacity as manager of SDM-OK, executed a claim form seeking the proceeds of the Policy on behalf of SDM-OK ("SDM-OK Claim"). (*Id*. ¶ 9 & Ex. 4). On March 28, 2024, Jonathan Boothroyd, in the asserted capacity as manager of SDM-CT, executed a claim form seeking the proceeds of the Policy on behalf of SDM-CT ("SDM-CT Claim"). (*Id*. ¶ 10 & Ex. 5). The Employer Identification Numbers ("EIN") of SDM-OK and SDM-CT are identical. (*Id*. ¶ 11 & Exs. 4, 5).

The SDM-OK Claim was accompanied by correspondence from the receiver ("Avon-WY Receiver") for Avon Capital, LLC, a Wyoming limited liability company ("Avon-WY"), identifying Avon-WY as the sole owner and member of SDM-OK and stating that the Avon-WY Receiver had appointed Nicole Jacobsen as the manager of SDM-OK. (Doc. 1, Compl. ¶ 12). The correspondence enclosed orders in a lawsuit

ongoing since 2014 in this Court styled *Universitas Educ. LLC v. Nova Grp. Inc.*, Case No. 14-FJ-0005-HE (the "Avon Litigation"), which seeks to recover on a judgment for over $6 million entered in the U.S. District Court for the Southern District of New York against Daniel Carpenter and affiliated companies. (*Id*. ¶ 12 & Ex. 6). The orders enclosed in the Avon-WY Receiver's correspondence to MetLife were (1) an order appointing the Receiver for Avon-WY on January 4, 2024 ("1/4/2024 Order"); and (2) an order clarifying the Avon-WY Receiver's authority ("2/22/2024 Order"). (*Id*.).

The 1/4/2024 Order gave the Avon-WY Receiver the authority to exercise the membership rights of Avon-WY in SDM-OK, including the right to replace the manager of SDM-OK. (Doc. 1, Compl. ¶ 13 & Ex. 6 at 1/4/2024 Order ¶ 1). But the Court did not appoint a receiver for SDM-OK and made clear that, unless ordered otherwise, the Avon-WY Receiver's "authority shall not extend to authorizing or directing, directly or indirectly, the sale or other disposition of the assets of SDM Holdings, LLC, including the insurance policies at issue in" the Avon Litigation. (*Id*. Ex. 6 at 1/4/2024 Order ¶ 5). As the Court found in another order in the Avon Litigation, while Avon-WY is the sole member of SDM-OK, the receivership over Avon-WY does not directly affect the assets held by SDM-OK, as said assets "are not, in a strict sense, assets of the Avon Capital, LLC receivership." (*Id*. ¶ 13 & Ex. 7, Avon Litig. Doc. No. 353).

SDM-CT asserts that it owns the Policy and that the claim of SDM-OK is fraudulent. (Doc. 1, Compl. ¶ 24 & Ex. 10). SDM-CT threatens to sue MetLife if it does not pay the proceeds of the Policy pursuant to the SDM-CT Claim. (*Id*. Ex. 11). Related to SDM-CT's claim of ownership, seemingly, are the assertions of counsel for SDM-OK

3

in the Avon Litigation that Avon-WY was dissolved in 2014 and that SDM-CT absorbed SDM-OK and its assets, including all the insurance policies it owns, in a merger effective June 30, 2017. (*Id*. Ex. 12, Avon Litig. Doc. Nos. 354-2, 354-3).

**The Interpleader Issues.** MetLife does not question the authority of the Court to appoint the Avon-WY Receiver. But MetLife is unclear as to (a) the authority of Ms. Jacobsen to claim the Policy proceeds, given there is a question as to the legal existence of SDM-OK; and (b) the identity of the owner and beneficiary of the Policy, in light of the claim of SDM-CT that it became the successor to SDM-OK. The 2/22/2024 Order indicates a dispute in this regard. (Doc. 1, Compl. ¶ 15 & Ex. 6 at 2/22/2024 Order p.2).

SDM-CT contends Avon-WY was dissolved in 2014 and that SDM-CT succeeded SDM-OK pursuant to merger in 2017. (*Id*. ¶ 24 & Ex. 12). But on February 23, 2018, SDM-OK submitted in the Avon Litigation the Oklahoma Secretary of State ("SOS") Certificate dated February 16, 2018, indicating SDM-OK existed as of that date, and represented that SDM-OK is a wholly owned subsidiary of Avon-WY. (*Id*. ¶ 16 & Ex. 8). In any event, since then, as reflected by Oklahoma SOS records, SDM-OK has been cancelled. SDM-OK was terminated on February 19, 2018, and was cancelled three years later, on February 19, 2021. To date, Oklahoma SOS records reflect SDM-OK has not been reinstated. (*Id*. ¶ 17 & Ex. 9).

Even if SDM-OK was not merged into SDM-CT in 2017 and Avon-WY continues to own SDM-OK, it is not clear whether SDM-OK, *via* Ms. Jacobsen, may dispose of the Policy, given SDM-OK is a cancelled entity that has not been reinstated. Pursuant to the Oklahoma Limited Liability Company Act (the "Act"), an Oklahoma limited liability

4

company ("LLC") that "fails to file the annual certificate and pay the annual certificate fee within sixty (60) days after the date due shall cease to be in good standing." 18 O.S. § 2055.2(D). If such LLC fails to make the filing and pay the fee within three years, it is "deemed to be canceled" under the Act. 18 O.S. § 2012.1(B) ("Section 2012.1(B)"). (Doc. 1, ¶ 18). Neither an Oklahoma LLC that ceases to be in good standing, nor such LLC's successor or assignee, may "maintain any action, suit or proceeding in any court of this state," including "on any right, claim or demand arising out of the transaction of business by the [LLC] after it has ceased to be in good standing" until the LLC "or any person that has acquired all or substantially all of its assets, has caused the limited liability company to be reinstated[.]" 18 O.S. § 2055.2(F). (Doc. 1, ¶ 19).

It is not clear whether and to what extent a "canceled" Oklahoma LLC ceases to exist for all intents and purposes. In particular, it is unclear whether such an LLC continues to exist to dispose of its assets and otherwise "wind up" its affairs. The Act provides that an LLC formed thereunder "is a separate legal entity, the *existence of which as a separate legal entity continues until cancellation of the limited liability company's articles of organization and completion of its winding up, if any*." 18 O.S. § 2004(B) ("Section 2004(B)") (emphasis added). There is no Oklahoma precedent of which MetLife is aware construing whether "cancellation" is the death knell of an Oklahoma LLC precluding it from "winding up" affairs by disposing of its assets. (Doc. 1, ¶ 20).

Oklahoma federal district courts have explored the issue, but they conflict. In *Barham v. Toney*, No. CIV-14-388-JHP, 2015 WL 4897960, at *3 (E.D. Okla. Aug. 17, 2015), the U.S. District Court for the Eastern District of Oklahoma determined an

5

Oklahoma LLC "canceled" within the meaning of Section 2012.1(B) ***does not*** continue to exist, even for purposes of "winding up" its affairs as contemplated by Section 2004(B). In *In re White*, 556 B.R. 489, 496, n. 36 (Bankr. N.D. Okla. 2016), the bankruptcy division of the Northern District of Oklahoma adopted the holding of *Barham*. But, a few years later, this Court's bankruptcy division, in *In re Grooms*, 599 B.R. 155, 164 (Bankr. W.D. Okla. 2019), suggested that Section 2004(B) might allow an Oklahoma LLC to continue in existence despite being "canceled" under Section 2012.1(B), at least for purposes of "winding up" affairs. The *Grooms* court, however, declined to decide the question in the absence of Oklahoma case law on point. *Id*. at 165. (Doc. 1, ¶ 21).

To be sure, even if SDM-OK ceased to exist, presumably its assets do not. The suggested remedy for recovery of defunct LLC assets is reinstatement of the LLC. A "canceled" LLC may apply for reinstatement. 18 O.S. § 2012.1(C); 18 O.S. § 2055.3. If reinstated, the "reinstatement relates back to and takes effect as if the [LLC] had never ceased to be in good standing and as if its articles of organization had never been canceled[.]" 18 O.S. § 2055.3(B). "All real and personal property, and all rights and interests, which belonged to the domestic limited liability company at the time its articles of organization were canceled or which were acquired by the limited liability company after cancellation, and which were not disposed of before its reinstatement, shall be vested in the limited liability company after its reinstatement as fully as they were held by the limited liability company at, and after, as the case may be, the time its articles of organization were canceled." 18 O.S. § 2055.3(D). (Doc. 1, ¶ 22).

Absent reinstatement of a "canceled" Oklahoma LLC that has failed to "wind up" its affairs, there is a question as to who may claim entitlement to the defunct LLC's assets. In some jurisdictions, the assets of a non-existent LLC revert to its members. *See In re Grooms*, 599 B.R. at 163 ("[T]he Court found one case from the State of Washington that holds that the assets of a canceled LLC do pass to the members.") (citing *Sherron Assoc. Loan Fund V (Mars Hotel) LLC v. Saucier*, 237 P.3d 338, 363-64 (2010)). But it appears Oklahoma courts have not decided the question. *See id*. (Doc. 1, ¶ 23).

If the assets of SDM-OK revert by law to Avon-WY—or if SDM-OK legally may wind up its affairs after being cancelled or is reinstated—Avon-WY may have authority to dispose of SDM-OK's assets *via* Ms. Jacobsen as manager of SDM-OK. Otherwise, Avon-WY would not appear to have authority over the assets of SDM-OK simply by being a member of SDM-OK. "As a general rule, a limited liability company is a legal entity distinct from its members, and the assets and liabilities of the limited liability company are separate from the assets and liabilities of its members." *In re Grooms*, 599 B.R. at 159 (citing 18 O.S. § 2032). "Rather than owning an interest in the assets of the limited liability company, a member holds a capital interest in the limited liability company. A member of a limited liability company 'has no right to demand and receive any distribution from a limited liability company in any form other than cash' and cannot be 'compelled to accept . . . a distribution of any asset in kind[.]'" *Id*. (quoting 18 O.S. § 2028). Likewise, "a member or manager, or both, of a limited liability company is not liable for the obligations of a limited liability company solely by reason of being such member or manager or both." 18 O.S. § 2022. (Doc. 1, ¶ 14).

7

**Responses to Interpleader.** MetLife filed this interpleader action on May 21, 2024, and served SDM-OK effective May 29, 2024, and SDM-CT effective May 28, 2024. (Docs. 6, 7). SDM-OK entered an appearance and answered, through the Avon-WY Receiver, on June 19, 2024. (Docs. 8, 9). SDM-OK admits MetLife's allegation that "MetLife has no interest in the Policy proceeds" and that the Court should "determine to whom the Policy proceeds should be paid." (Doc. 9, SDM-OK Ans. ¶ 26). SDM-OK does not oppose this motion. SDM-CT has yet to enter an appearance or answer and, as such, is in default. This interpleader action is ripe for resolution.

## ARGUMENT AND AUTHORITY

Pursuant to Section 1335, this Court has "original jurisdiction of any civil action of interpleader or in the nature of interpleader" of "money or property of the value of $500 or more" if "[t]wo or more adverse claimants, of diverse citizenship as defined in subsection (a) or (d) of section 1332 of this title, are claiming or may claim to be entitled to such money or property" and "the plaintiff has deposited such money or property . . . into the registry of the court, there to abide the judgment of the court[.]" 28 U.S.C. § 1335. The U.S. Supreme Court instructs Section 1335 must be "liberally construed" to allow an insurance company to interplead a dispute satisfying these jurisdictional prerequisites and be discharged from liability for the deposited proceeds. *State Farm Fire & Cas. Co. v. Tashire*, 386 U.S. 523, 533-34 (1967).

As the U.S. Supreme Court explained in *Tashire*, interpleader is justified by the interests of the insurer in avoiding duplicative liability and the interests of the claimants in fair consideration of their competing claims:

> Were an insurance company required to await reduction of claims to judgment, the first claimant to obtain such a judgment or to negotiate a settlement might appropriate all or a disproportionate slice of the fund before his fellow claimants were able to establish their claims. The difficulties such a race to judgment pose for the insurer, and the unfairness which may result to some claimants, were among the principal evils the interpleader device was intended to remedy.

*Id.* at 533; *accord In re Millennium Multiple Emp. Welfare Benefit Plan*, 772 F.3d 634, 639 (10th Cir. 2014) ("Interpleader is a statutory remedy that offers 'a party who fears being exposed to the vexation of defending multiple claims to a limited fund or property that is under his control a procedure to settle the controversy and satisfy his obligation in a single proceeding.'") (quoting 7 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1704 (3d ed. 2001)).

These interpleader interests also warrant nationwide injunction of litigation against the insurer with respect to the disputed proceeds, discharge of the insurer from all liability therefor, and dismissal of the insurer from the interpleader action. It is "reasonable and sensible that interpleader, in discharge of its office to protect the fund, should also protect the stakeholder from vexatious and multiple litigation." *Tashire,* 386 U.S at 534. Such "suits sought to be enjoined are squarely within the language of" Section 2361, *id.*, which provides that, in an interpleader action under Section 1335, "a district court may issue its process for all claimants and enter its order restraining them from instituting or prosecuting any proceeding in any State or United States court affecting the property, instrument or obligation involved in the interpleader action until further order of the court" and "shall hear and determine the case, and may discharge the

plaintiff from further liability, make the injunction permanent, and make all appropriate orders to enforce its judgment," 28 U.S.C. § 2361.[1]

The Section 1335 conditions for interpleader are satisfied here. The Policy has a value of more than $500, the Defendants are competing claimants to the Proceeds and are of diverse citizenship, and MetLife is ready to deposit the Proceeds into the registry of the Court. (Doc. 1, ¶¶ 1-10). MetLife cannot determine the proper beneficiary of the Policy proceeds without risking exposure to double liability. (*Id*. ¶ 25). As a mere stakeholder, MetLife has no interest in the Policy proceeds (except to recover its attorney fees and costs of this action) and requests that this Court determine to whom the Policy proceeds should be paid. (*Id*. ¶ 26).

Upon deposit of the Proceeds in the registry of the Court, this Court may discharge MetLife from liability for the Proceeds, permanently enjoin other litigation with respect to the Proceeds, and dismiss MetLife from this action with prejudice. *See, e.g., State Farm Life Ins. Co. v. Honomichl*, No. CIV-22-228-J, 2022 WL 5245290, at *1 (W.D. Okla. July 6, 2022) ("The Court now determines that Plaintiff is entitled to be discharged and dismissed with prejudice from this action and from all liability as to any claims by Defendants. In addition, the Court holds that Defendants should be permanently enjoined

---

[1] *See also Gen. Atomic Co. v. Duke Power Co.,* 553 F.2d 53, 56 (10th Cir. 1977) ("If the stakeholder is disinterested, he is entitled to dismissal. An ancillary aspect is that suits in other states can be enjoined."); *U.S. v. Major Oil Corp.*, 583 F.2d 1152, 1157 (10th Cir. 1978) ("[O]ne of the most basic equitable 'trailings' attendant upon the vintage interpleader proceeding is that injunctive relief is especially proper where there are numerous claimants and where such relief would prevent a multiplicity of lawsuits"; this "injunctive power is nationwide and is intended to halt any proceeding the court deems inconsistent with the interpleader proceeding.").

and restrained from asserting any claims in any court or other forum against Plaintiff and relating to the proceeds at issue in this matter.").[2]

## CONCLUSION

For the reasons outlined above, MetLife requests that the Court enter an order (i) permitting MetLife to pay into the registry of the Court the Proceeds, including any applicable interest; (ii) discharging MetLife from any further liability upon deposit of the Proceeds, including any applicable interest, with the Court's registry; (iii) permanently enjoining Defendants from instituting any action or proceeding in any state or United States court against MetLife for recovery of the Proceeds, including any applicable interest; and (iv) dismissing MetLife with prejudice from this action.

Respectfully submitted,

/s/ Alison M. Howard
Alison M. Howard, OBA #19835
CROWE & DUNLEVY,
A PROFESSIONAL CORPORATION
The Braniff Building
324 North Robinson, Suite 100
Oklahoma City, Oklahoma 73102
Telephone: (405) 235-7700
Facsimile: (405) 239-6651
alison.howard@crowedunlevy.com

**ATTORNEYS FOR PLAINTIFF, METLIFE**

---

[2] *See also, e.g., CRST Expedited, Inc. v. Thurmond*, CIV-20-954-R, 2021 WL 932041, at *2 (W.D. Okla. March 11, 2021) ("These [Section 1335] requirements are met here, and therefore, the Court may discharge the interpleader plaintiff of any further liability, thereby allowing CRST Expedited to withdraw, leaving the interpleader defendants to prosecute their competing claims to the disputed property among themselves.").

11

## CERTIFICATE OF SERVICE

I hereby certify that on this 19th day of August, 2024, I electronically transmitted the attached document to the Court Clerk using the ECF System for filing. Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following ECF registrants:

Heidi J. Long,
LEONARD, LONG & CASSIL, PLLC
6301 N. Western, Suite 250
Oklahoma City, OK  73118
(405) 702-9900
hlong@llc-attorneys.com

**ATTORNEYS FOR RECEIVER FOR AVON CAPITAL, LLC, ON BEHALF OF SDM-OK**

I hereby certify that on this 19th day of August, 2024, I served the aforesaid document by U.S. mail postage prepaid on the following:

Robert B. Cox
SDM Holdings, LLC
HALLORAN & SAGE LLP
225 Asylum Street
Hertford, CT  06103-1503

**ATTORNEYS FOR SDM-CT**

                          s/Alison M. Howard
                          Alison M. Howard, OBA# 19835